**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

United States of America

    v.                                         Criminal No. 14-cr-104-LM
                                                    Opinion 2015 DNH 023

Roger Perkins and
Windyann Plunkett

**O R D E R**

Defendants Roger Perkins and Windyann Plunkett were indicted on a charge of conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(iii). Perkins also faces charges of being a felon in possession of a firearm, and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 922(g)(1), respectively.

The charges stem from the execution of a search warrant at Perkins's apartment in Laconia, New Hampshire on March 25, 2014. Perkins and Plunkett have now moved to suppress the contents of a safe that was discovered during the execution of the search warrant, and opened at the Laconia Police Station the following day. The court held a hearing on this matter on February 12, 2015. For the reasons that follow, the Defendants' motion to suppress is denied.

**Factual Background**

On March 24, 2014, Detective Christopher Noyes of the Laconia Police Department filed an application for a warrant to search Perkins, his vehicle, and his apartment, located at 23 Gale Avenue in Laconia. Detective Noyes's warrant application was accompanied by a detailed affidavit chronicling an investigation into Perkins's drug dealing activities. The application sought permission to search for and seize items including crack cocaine, cocaine, drug paraphernalia, and profits from drug transactions.

A judge of the New Hampshire Circuit Court approved the warrant application, and it was executed the following day, on March 25, 2014. Officers waited outside of Perkins's apartment, and conducted a vehicle stop when he returned home. Perkins was arrested when officers discovered crack, cocaine, mushrooms, and MDMA inside of his car.

Officers then conducted a search of Perkins's apartment. Plunkett, who is Perkins's girlfriend, was the only person at home at the time of the search. In plain view, officers discovered marijuana, mushrooms, and two firearms. Officers also observed a locked Sentry safe.

By this time, Perkins had been transported to the Laconia Police Station, then to the Belknap County Jail. Detective

Noyes placed a telephone call to a different Laconia police officer who had transported Perkins to the County Jail, and asked if Perkins would divulge the code to access the safe. Perkins responded that he would not.

The following day, March 26, 2014, Detective Noyes began processing the evidence that had been seized during the execution of the search warrant.  Detective Noyes recalled that he had discovered some paperwork associated with the safe, which included a factory-issued access code.  Using this code, Detective Noyes was able to gain access to the safe.  Inside, he found further quantities of crack and cocaine, as well as cash and two additional firearms.

Perkins moved to suppress the items discovered inside of the safe, contending that the act of opening and searching the safe exceeded the scope of the warrant in violation of the Fourth Amendment.  Plunkett subsequently filed an assented-to motion to join Perkins's motion to suppress, which the court granted.

## Discussion

The Fourth Amendment to the United States Constitution provides that no warrant shall issue, "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be

seized." U.S. Const. amend. IV; see also United States v. Lyons, 740 F.3d 702, 724 (1st Cir. 2014). There are limits, however, to the extent of the required particularity of the description. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found . . . . Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." United States v. Ross, 456 U.S. 798, 820-21 (1982).

"As a general proposition, any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." United States v. Gray, 814 F.2d 49, 51 (1st Cir. 1987). This is true whether the container is locked or unlocked. United States v. Towne, 705 F. Supp. 2d 125, 134 (D. Mass. 2010); see also United States v. Wright, 704 F.2d 420, 422-23 (8th Cir. 1983) (per curiam) (search of a locked safe permissible where the drugs described in the warrant "obviously could fit within the safe and reasonably could be expected to be found in it"); United States v. Morris, 647 F.2d 568, 573 (5th Cir. 1981) (citations omitted) (internal quotation marks

omitted) (reasoning that suppressing evidence found inside of a locked jewelry box at the subject premises would require "either [] an additional search warrant [] for each container within a larger container, or that the agent seeking the warrant possess extrasensory perception so that he could describe, prior to entering the house, the specific boxes, . . . etc. that he anticipated searching").

Detective Noyes's warrant application particularly described both the targets of the search, and the contraband that he expected might be discovered. Detective Noyes sought permission to search Perkins, his vehicle, and his apartment located at 23 Gale Avenue. Detective Noyes's highly detailed warrant application also set forth the items that he expected to find, including crack, cocaine, and other drugs, as well as packaging materials, drug paraphernalia, and drug proceeds.

A safe is precisely the type of container that would reasonably be expected to contain contraband in these circumstances. Once officers executed the warrant and discovered the locked safe, they were under no additional obligation to secure a separate warrant to open it. See Ross, 456 U.S. at 821 ("When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers . . .

must give way to the interest in the prompt and efficient completion of the task at hand."). Thus, Detective Noyes's opening of the safe and his seizure of its contents did not violate the Fourth Amendment.[1]

### Conclusion

For the foregoing reasons, Defendants' motion to suppress (doc. no. 18) is DENIED.[2]

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 17, 2015

cc:   David H. Bownes, Esq.
      Bjorn R. Lange, Esq.
      Jennifer C. Davis, Esq.

---

[1] At oral argument, Defendants relied heavily on Riley v. California, 134 S. Ct. 2473 (2014), and United States v. Wurie, 728 F.3d 1 (1st Cir. 2013), for the proposition that Perkins had a heightened expectation of privacy in the locked safe. The court views these cases as wholly inapposite, as they involve the factually distinguishable circumstance of a warrantless search of a cellphone incident to arrest.

[2] Separately, Perkins moved to suppress a post-arrest statement that he made regarding the contents of the locked safe (doc. no. 19). Pursuant to the Government's agreement not to introduce this statement in its case-in-chief, this motion is denied as moot.